and we turn to the next case on our day calendar, which is Martinez v. McCarthy. Good afternoon, Your Honors. Stephen Ciattoli here. Can you hear me okay? We can. Thank you very much. I wasn't sure. Again, Stephen Ciattoli here from the law firm of Tucson and Ciattoli in Syracuse. We represent the appellant Darlene Martinez in this matter. Briefly, for my prepared remarks, this is a case in which if you look at the facts and all of the criteria for sexual harassment, there really is no dispute that what took place there was sexual harassment, a textbook case. And if this were in a purely private or civilian setting, there would be no doubt that it would survive any dispositive motion. I think it is that clear. Even the trial court in its decision agreed that this was fairly egregious misconduct of bad behavior by the individual appellees. So what is the issue then? What is the problem that brings us before the Second Circuit? The issue is the Ferris Doctrine. Whether this appellant's Title VII claim must be barred by the Ferris Doctrine under the intra-military immunity rule from that case. There are several issues we are asking of the court to look at because we certainly cannot ask this court to overturn the Ferris Doctrine. But it has been questioned and it has been reviewed in different ways by different circuits. And there are exceptions to it. And one of those exceptions involves a hybrid dual-status employment situation where the victim, the plaintiff, works in both a civilian and a military capacity, which is what we have here. And there are several significant cases which are reviewed. The fact is that must be reviewed when dealing with a hybrid dual-status employment situation. This court, in the case of Luckett v. Bair, first identified the exceptions and ultimately the test it would use in determining if claims by a dual-hybrid status employee of the military would be barred by Ferris. We think this court needs to define or clarify what that test truly is and how it is applied. We argue that this test, as this court has acknowledged by its own words and its own decisions, is conduct-based as opposed to being looked at the status or relationship of the individuals involved. It must be determined on the activity or conduct being challenged and whether that in nature rather than focusing on the employment or status relationship between the parties. I believe that would apply here. The second issue is the application of the test from Luckett to the facts alleged here by the appellant. It is unambiguously clear that the overwhelming majority of the alleged misconduct and harassment against the appellant was not related or committed in furtherance of any military objective or function and thus cannot be protected by Ferris. Thus, this case can go forward to trial under Title VII. When we look at the actual incidences of harassment, which we stated in our brief and are in the records, there were 21 such individual incidences that we described, which are part of the record and, of course, have to be accepted as true for purposes of the dispositive motion and for purposes of this appeal, and which I would also point out that the government or the military personnel involved never really dispute these items. When you look at these incidences and just read them as they are military, there is hardly even any reference. The incidents are mostly private. They are personal. They are sexual. They occur off-base. They are non-military. They involve things that occurred on Facebook. They involve traffic spots. They involve references to sexual affairs, pornography, personal records. There is a reference here to Ms. Martinez of Kicks. There is reference to Ms. Martinez's ethnicity. There is even physical abuse, even a choking incident. All of this occurred while she was working as a civilian unit administrator here in Mattydell, New York, which basically for her was a Monday through Friday, 9 to 5 job where her supervisor was a civilian. So, under the Ferris Doctrine and the exception to it, I think we have a clear case where this is non-military, outside the military context, that it is not involving the type of military decisions that the courts have been concerned with. There is no issue here of military preparedness or the command structure or military. It does not involve issues like termination, transfer of employment, training, enlistment, promotions, equipping, or discipline. It really, in so many ways, has nothing to do with the military. Just because an individual wore a uniform, that should not be their get-out-of-jail-free card. It should not allow them to get away with doing harm to a woman and engaging in this type of abuse. The uniform should make a statement that they are here to protect the weak and not prey on them. As far as the policy goes, I think there is a public policy that probably does need to be updated and brought more into the modern world. This is a woman who, for all intents and purposes, was working a civilian job and was quite egregiously sexually harassed by several men. Nothing was done about it. The only thing that can be done about it is through this route that we have right now, through the Ferris Doctrine, through the exceptions to it, that allow her to bring a Title VII case and put her case before a jury. Those are the end of my prepared remarks. I want to thank you very much. I will answer any questions that your I'll ask Judge Carney if she has any questions. Yes, I do. The Ferris Doctrine has been in place since, I guess, it's the early 50s. We start with the principle that the government is immune as a sovereign from damages action. We then see the Federal Tort Claims Act enacted to eliminate immunity in certain circumscribed circumstances. The Ferris Doctrine then gets developed judicially to expand as an exception to the Federal Tort Claims Act, saying surely the government didn't mean to abrogate its immunity in the context of the military. In these cases in Blucket and Overton, since the early 2000s, so 20 years ago, we've been struggling with how to make sure, particularly in the circumstance of a hybrid worker in the military, that norms of non-discrimination, non-harassment are observed. But I haven't seen much by way of case law that cuts back on the Ferris Doctrine immunity that you're seeking here. I mean, your brief focuses on, that says that we should focus on conduct in a way that means that anytime someone behaves in a way that contravenes Title VII, that we should treat that as not behavior intricately related to the military. So I see us just having still a huge burden to overcome, and Congress hasn't acted to abrogate the Ferris Doctrine or to modify Title VII and embrace immunity in the military context. Here you sued the Army and the two first sergeants involved. But I wonder if you can, you know, what's the strongest case that you can point to that has found an exception, a Title VII exception to the Ferris Doctrine actually awarded damages or injunctive relief or what have you, treated this hybrid employee bringing a suit in the military as a regular Title VII claim and overlooked Ferris? Yes. Your Honor, you know, you mentioned struggling with the doctrine and how it has been treated and involved over, you know, the years, the decades. And I agree. The cases we really concentrated on were the Second Circuit cases of Overton and Luckett. I can't say that I can present a case to you which was right on point, actually, with our case and say, you know, it passed full, you know, muster and went on to, you know, to success as Title VII and damages being awarded. But what I would say is that when I look at Overton and Luckett, I do see the path that does lead to Title VII and damages. And I think it's particularly true here. Clearly, the exception has been stated. Overton, particularly in the concurring decision, and I agree it was a concurring opinion, but it was so strong to look at the conduct and the conduct of the appellees and not just the relationship or the status, not just the uniform. And ultimately, even in the concurring opinion, when it found in favor of the majority opinion, which was that Overton could not recover and that Overton's case would be dismissed, it was different. The supervisor involved was his military superior. It did implicate military concerns and military decisions. One of Overton's complaints was that I was, you know, denied a promotion. Again, the kind of thing you see in civilian cases, private cases quite a bit. But here, you know, that clearly implicates, you know, military decisions. And I don't think we have that here, Your Honor. So maybe we're presenting- But isn't it the case, I mean, you sued the acting secretary of the Department of the Army and two first sergeants who had a relationship with the plaintiff because they were working on a base together. I mean, their conduct was not, you know, denying a promotion. It was, as alleged anyway, it was harassing and totally inappropriate. Nonetheless, for a court to hold the Army responsible and award damages or require reinstatement seems intrusive into the military in a way that Ferry speaks to. Why is that wrong? Yeah, Your Honor, if that's the case, that almost no matter what, they're on a military base, no matter what, somebody's wearing the uniform, no matter what, it would be, you know, somewhat intrusive. Then there really is no exception to the Ferris doctrine. Then there really is no exception or route by which, let's say a woman here, but it could be racial, it could be, you know, based on any number of protected categories, there would be no means or route to get to a Title VII claim. I think what the government's arguing, and I think in part what Your Honor's question is saying, that no matter what, we lose. No matter what, we can't get around it. And- Well, I'm also suggesting that possibly- Oh, go ahead. Sorry. Well, I mean, and I know, you know, we all play our turn of our devil's advocate in looking at our facts and our cases. Right. But if there's any case, I think, that satisfies the exception, certainly we're not looking to overturn Ferris, but if there's any case that satisfies the exception, it would have to be this one. And I think it can be distinguished from Overton. I would suggest that possibly a situation where a hybrid employee is being supervised and harassed by another civilian employee would be a cleaner example of when the military as employer might be liable under Title VII in a way that wouldn't interfere so long as the that was being done is non-military. And you don't have that quite here. But you've answered my questions. That's all I have. Thank you very much. Thank you, Your Honor. And boy, I would love a cleaner fact situation. I would love it to be clean, but we never quite get that. I'm sure you would. We never do, do we? Right. Thank you, Your Honor. Thank you. Judge Clark. Judge Clark. No questions. Thank you. Thank you, Your Honor. I don't have any questions either, and we'll turn to counsel for McCarthy. Good afternoon, and may it please the court. Karen Foster-Lesbron, Assistant United States Attorney for the Northern District of New York for the appellees. This case clearly does present and implicate military decisions and military judgments. Ms. Martinez's Title VII claims seek to hold the army responsible for failing to prevent, investigate, and remediate a hospital work environment that she alleges was caused by harassing and intimidating behavior of fellow Guard reservists. While she was indeed a dual status employee, meaning that she had both civilian and military roles, her military role was as a member of a National Guard unit, and it was other members of this Guard unit who allegedly harassed her. They were not her civilian supervisors. In fact, she even alleges that they had no control or authority over her civilian duties or responsibilities whatsoever. The question that the Ferris faction requires this court to answer is whether allowing her claims to proceed in a civilian court would interfere with military discipline and decision-making. The answer here is clearly yes. Her claim against the army is that the army permitted a white boy as club culture to exist among the service members of her reserves unit, that they conducted a sham investigation when she complained about it, and that Weisbrod's and Michael's military supervisors failed to discipline them for their conduct. If this case were to proceed in the district court, Ms. Martinez would need to prove not only that the conduct that she complains of occurred and occurred because of her sex or race, but also that the army was aware of that conduct and failed to take appropriate action. Her claims, therefore, necessarily implicate what the army does and did to prevent harassment, the adequacy of their anti-discrimination and anti-harassment policies, the adequacy of the investigation into the complaints that she made, and their decision-making, the decision-making of these first sergeants' military supervisors to not discipline them for the challenge conduct and, indeed, to not even believe Ms. Martinez' complaints. Therefore, if this case were to proceed in civilian court, it would absolutely implicate military structure, the relationships between service members, and military policy and policy. As my adversary argued that there is an exception for the Ferris action for a Title VII complaint by hybrid employees, that's not correct. The exception that has been recognized is a civilian employee of the military. These cases in which employee plaintiffs are dual status are, as Judge Carney pointed out, few and far between, and not a single court, including this one, has allowed one of these claims to proceed under Title VII. This is not the case which would prevent an exception, and I would also note that Overton noted in footnote 9 that there was a clear congressional intent when creating the dual status guard technicians positions under the Guard Technicians Act to allow these dual employees to be covered by the FPCA, to be able to bring claims under the FPCA, but that there is no such indication of congressional intent to allow an exception under Title VII, and I would point out that a number of the cases relied on by Ms. Martinez in her brief are those types of FPCA cases in which exceptions have been recognized, but there is no such exception for this case. Ms. Martinez suggests in her reply brief that the claims can somehow be separated, that the individual acts that are alleged to have made up the hospital work environment can be dissected such that those that are clearly civilian can proceed on their own in civilian court. We would respectfully submit that it's not possible to engage in that type of a dissection. This is not a 21-count harassment complaint against the individual staff sergeants who are no longer defendants in this action. She does not appeal from the dismissal of the claims against them. Rather, this is a claim against the Army for failing to prevent or address sexual harassment. That concludes my prepared remarks. If the judges have questions, I'd be happy to take them. Judge Cronin. Ms. Lesbronce, I wondered if you could tell me what remedies Ms. Martinez actually has if she has alarming allegations of harassment and a hostile work environment and discrimination. What is available to her to fix the situation? Certainly, Your Honor. If I could just bring your attention to page 16 of our brief, there are a number of alternative remedies. Members of the military, service members may bring their claims within the military's own Equal Opportunity Program, which is governed by Department of Defense Directive 1350.2 and Army Regulation 600-20. It's not that service members have no remedy. Could you just describe what that is? I'm not familiar with Article 138 of the Uniform Code of Military Justice. Could you just tell us what happens? Yes. Under the military's Equal Opportunity Program, it's an administrative remedy similar to EEOC remedies. The Article 138 of the Uniform Code of Military Justice really addresses allegations of wrongdoing by service members to the extent... It's not cited in our brief, but there is also Army Regulation, I believe it's 15.6, where some of these allegations of things that happened off of base, cyberbullying, riding her off the road, physical altercations, you can certainly make a disciplinary complaint against another service member for engaging in the type of conduct which she alleges. And both Article 138 and 15-6 would allow for an investigation and disciplinary proceedings against these first sergeants for the things that she claims that they have done. And are hostile work environment claims cognizable under the procedures that you've identified? Claims for the Army's failure to investigate would be handled under Army Regulation 600-20, which is the military EEO process, the MEO process it's called. So you're saying they are cognizable, is that right? They would be cognizable. Okay. Thank you very much. That's all I have. Thank you, Judge. Judge Clark. No questions. Thank you. Thank you. This is Judge Koubranis and I have no questions. We thank counsel for their...